**STEELE et al. v. ESQUIRE LAUNDRY & DRY CLEANERS, Inc.**

No. 5609.

United States District Court
W. D. Missouri, W. D.
April 25, 1950.

W. F. Woodruff and Lucian Lane, Kansas City, Mo., for plaintiff.

Thomas E. Scofield, Kansas City, Mo., for defendant.

DUNCAN, District Judge.

Plaintiffs instituted this suit on March 9, 1947, seeking to enjoin the defendant and those controlled by it, (for accounting, attorneys' fees and costs) from infringing Patent No. 1,879,918 issued to the plaintiff J. W. Steele on September 27, 1932, for a collar stiffening device. Plaintiff, J. W. Steele and Company, a corporation, is the licensee of Steele.

The accused device is covered by Patent No. 2,458,998 granted to W. M. McFall on January 11, 1949, and sold under the trade name of "Shirt Pax."

The action is being defended and the costs paid by the patentee McFall.

"Anti Crush," the plaintiffs' patented device, may be described generally as: "A stiffening and supporting device for collars

including strips of material substantially equal in length and width and joined together intermediate their ends, one of said strips being slitted on either side of the point of connection between the said strips to define portions to extend outward when said strips are folded one upon the other and bent for insertion within the collar."

"Shirt Pax" the accused device, is composed of two units; one element, the larger, may be described as a piece of pasteboard 16 inches long and 8 inches wide, perforated across in two places—the first about 4 inches from the top, and the second about 1-¾ inches below the first. The top is rounded. When a shirt has been folded or is being folded, the portion of the board below the perforations is inserted into the folds of the shirt for a distance of about 10-¼ inches. The board is broken at the perforations so that it turns up behind and folds over the collar of the shirt.

The distance between the perforations is approximately the height of the collar, so that when this element of the device is in position, 10-¼ inches thereof extend into the shirt between the front and back, 1-¾ inches is turned up behind the collar, and the remaining portion forms a covering over the top of the entire collar.

A triangular shaped cut is made in the top or protecting portion of the device smaller than the inside of the collar. On the outer sides of the triangular cut, the board is perforated so that when the pieces are bent at the perforations, flaps are formed. These flaps bend downward adjacent to the neck band of the collar about one inch. They may or may not contact the band of the shirt, depending upon the size of the collar band.

The second portion, designated by defendant as the "locking" member, is almost identical in shape and construction to plaintiffs' patented device, "Anti Crush." The only material difference is that the link joining and attaching the two pieces of the device in the middle is somewhat longer in the accused device.

One member of the locking device is inserted between the shirt band and the fold of the collar exactly as is done with "Anti Crush." The other member is then folded over into the inside of the collar, through the hole cut in the top of the first member as above described. When this member of the locking device is so inserted, the edges thereof come into contact with the tabs which have been turned down and are now between the collar band and the inner member of the locking device. That portion of the locking device which has been inserted between the collar band and the fold of the collar serves as a support of that portion of the collar in exactly the same manner as the patented device.

The bottom edge of the perpendicular element of the locking device which has been placed inside of the collar rests on the back board, and the top edges rest under the top covering of the device on each side thereof, thus protecting the collar against the pressure incident to packing and handling.

When shirts are so equipped with the "Shirt Pax" they may be stacked together alternating the collar ends of the shirts, so that a compact unit suitable for wrapping without the use of boxes or cartons is formed.

The defendant has not manufactured or sold the accused device, and defendant is sued by plaintiff solely because of its use of the accused device in the conduct of its business.

Defendant denies that it has ever infringed the device in Kansas City or elsewhere by using, vending or selling it. It denies that the patent was duly and legally issued, and denies that J. W. Steele was the original, first and sole inventor of the collar stiffening and enforcing means shown and described in said patent; and further alleges that the patent is invalid and void for lack of invention; that "Every material and substantial part of the collar stiffener and reinforcing means described and claimed in said patent was patented or described in one or more printed publications prior to the patentee's supposed invention or discovery thereof, or more than two years prior to his application for said patent;" that the plaintiffs are estopped from contending that any of the claims of said patent is of such scope as to cover or embrace defendant's shirt

packing unit, and last, that the action was not brought in good faith, because it was not brought against the manufacturer, that it was brought for the purpose of harassing and intimidating the defendant, and is devoid of equity.

The question of patentability has been in issue in prior litigation and it has been adjudged valid and patentable. The matter was first before the court in the Western District of North Carolina in the case of "J. W. Steele and Company v. Walter C. Kront and Wing Paper Box Co. in Equity No. 122." In that case the question of infringement was limited to claims 1-2-3. In Findings and Conclusions by Judge Webb, the validity of the patent was upheld and the claims infringed.

The question was before this court in Loroco Industries Inc., v. Steele, and in an opinion by Chief Judge Reeves on November 26, 1948, reported in 81 F.Supp. 146, the validity of the patent was upheld. The plaintiff now contends that the determination of the issue of validity determined by Judge Reeves is binding upon the court in this case.

■ The defendant does not deny that the different divisions of the United States Court in the Western District of Missouri constitute but one court, and that a determination of a question of law by one of the divisions is binding upon the other divisions, but it insists that questions affecting the validity of the patent which are before the court in this case were not presented to or considered by Judge Reeves, and therefore, that his determination of the question of validity is not the law in this case.

It contends that the question of conception and of reduction to practice were not presented to Judge Reeves, and also that patent No. 1,837,567 which is alleged to have anticipated plaintiffs' patent were not before Judge Reeves. With that contention I cannot agree.

Apparently all of the issues necessary to a determination of the validity of the patent were at issue in the case before Judge Reeves and were determined by him in favor of the validity of the patent.

It is the law that the determination of a question by one division of the court is binding and should be followed by the other divisions of the court, and I therefore hereby adopt the Findings and Conclusions of Judge Reeves in respect to the validity of plaintiffs' patent, the same as though fully set out herein, and find that the plaintiffs' patent is a valid patent.

Plaintiffs contend that the locking device as used by defendant is performing the same function in the same manner, and produces the same result as "Anti-Crush."

As heretofore stated, the "locking device" used by the defendant is an element of the composite device as described in defendant's patent. The only substantial difference between the locking device and the patented device, is in the length of the link joining the two members. They are made of practically the same weight material and practically the same shape.

Claim No. 2 of the patented device uses the following language: "Collar bracing and stiffening means for collar-attached shirts, comprising a collar-bracing band of flexible stiffening material conformable to the inner neck-fold of the collar by embracing a substantial portion of the inside neck-engaging face thereof, and a collar-stiffening band connected with said first band for bracing engagement with said collar between the inner and outer folds thereof."

Claim No. 3 provides: "Collar bracing and stiffening means for collar-attached shirts, comprising a pair of collar-bracing bands of flexible stiffening material insertable into positions embracing and conforming to the opposite faces of a substantial portion of the neck-fold of the collar, and a flexible connection between the midportions of said bands at the meeting ends of the collar."

Claim No. 4 provides: "Collar bracing and stiffening means for collar-attached shirts, comprising a collar-bracing band of flexible stiffening material conformable to the inner neck-fold of the collar by embracing a substantial portion of the inside neck-engaging face thereof, retaining means for projecting over the meeting ends of the collar into engagement with the same between the inner and outer folds thereof, and wing

elements projecting laterally intermediate said retaining means and band."

Claim No. 5 provides: "Collar bracing and stiffening means for collar-attached shirts, comprising a collar-bracing band of flexible stiffening material insertable between the collar folds and having a shape conformable thereto by embracing a substantial portion of the outer face of the neck-fold, * * *".

In the specifications it is stated that: "* * * it will be seen that it provides a flexible stiffening structure for the collar, adapted to snugly conform to the shape of the collar and thereafter support and maintain it in its proper shape with practically a maximum degree of supporting strength for the materials used, in the later handling and bundling of the finished shirt."

In another place it is provided: "* * by providing a stiffening member not only inside the collar, for embracing the inner face of the neck fold, but also between the collar folds for embracing the outer face of the neck-fold, and connecting and holding these stiffening and supporting elements together in their proper functional position by a connection bridging the meeting ends of the collar."

Thus it will be seen by reading the specifications and the claims, that one of the principal elements of plaintiffs' patent is that it shall conform to and embrace the neck bands of the shirt which they are designed to reinforce and protect against crushing, and the plaintiff contends that the so-called "locking device" as used by the defendant performs identically that function in identically that manner; that it does conform to and embrace the outer surface of the neck band.

Throughout the trial of the case, in the briefs and in the arguments of counsel, the question of whether or not these two elements did perform this function in practically the same manner was one of the principal grounds of contention. The plaintiffs contend that the locking device does perform the function in the same manner, i. e., that it conforms to and embraces the inside band of the shirt, and that it results in protection and support against crushing of the collar of the shirt.

Whereas the defendant contends that while it does assist or perform the function of preventing the crushing of the collar, it does not perform that function in the same manner as the patented device. The tabs which form a part of the covering or protecting member over the top of the collar and extending down from the top thereof prevent the member of the "locking device" which is inserted inside the neck of the shirt from contacting or embracing the neck band of the shirt as taught by the claims of plaintiffs' patent.

A careful examination of the exhibits showing the use of the device will reveal that the distance between this member and the neck band of the shirt will vary with the size of the shirt. The hole in the top of the protecting element of "Shirt Pax" being of a uniform size, the inside portions thereof vary in their proximity to the band, as the collar increases in size. Thus this element which is a part of the "locking device" does not support the collar itself, nor come in contact or embrace it as the word "embraced" is used in the claims and the specifications.

Both ends thereof do come in contact with the top and bottom part of the element inserted into the inside of the shirt which prevents crushing of the collar. In other words, the pasteboard which forms a part of the top of "Shirt Pax" rests on top of the "locking device" and the bottom of the "locking device" rests against the bottom of the pasteboard that is inserted in the back of the shirt, thus protecting the collar from being crushed.

With "Anti-Crush" the bottom of the element rests on the pasteboard back in the shirt, just as it does in "Shirt Pax" but the top thereof, adhering to the band of the shirt, protects it against being crushed by another shirt or any other object that may be laid upon it. The "locking device" in "Shirt Pax" does provide support to the collar. That portion which is inserted between the folds of the collar and the neck band perform identically the same function in exactly the same manner as "Anti-Crush." That portion which is turned inside the collar supports the top of the first member folded over the collar and thus protects the

collar from being crushed when other shirts or objects come into contact with it. The function is the same as that performed by "Anti-Crush" but performed in a somewhat different manner, but I think not materially or substantially different.

The plaintiffs contend that the locking element of the accused device with the longer connecting link, could be used in a shirt in identically the same manner and perform the identical function as the patented device. With this I am in accord. I think the longer link would probably render the device less substantial, but functionally, it would work in identically the same manner. Its wings or elements are the same width and would afford practically the same protection, but the defendant does not use the element separately. It is used as a part of the composite device. It is simply one element used in assembling "Shirt Pax."

Having determined that the "locking device" is practically identical in shape and construction with the patented device, and that it performs the same function, i. e., preventing crushing of the shirt collar, but in a slightly different manner from that of the plaintiffs, we are confronted with the legal question * * * is the use of the "locking device" which is used for the further purpose of supporting and maintaining the roof or "ceiling" so to speak, of the "Shirt Pax" preventing it of itself from crushing the collar when weight is put upon it, an infringement of plaintiffs' patent? In other words, can one simply adopt the patent of another and use it in a slightly different manner for the same purpose and avoid infringement?

Defendant admits that if it had been using the locking element alone of the two part device, and had been using that element by tucking in the locking tabs into bracing engagement with the inner neck band of the collar, a finding of infringement would be justified. The accused device, taken as a whole, is different in construction, function and provides protection for the collar against crushing in a different manner.

■ I well realize the legal elements necessary to infringement, i. e., does the "ac-cused device" accomplish substantially the same result by substantially the same means and by substantially the same method of operation? I think the locking element of the accused device accomplishes practically the same result in substantially the same manner.

■ The "borrowed" element * * * the locking device * * * performs a part of the function of protection, just as "Anti-Crush" does, but it performs an additional function, and a comparable function in a slightly different manner. Certainly it would seem that one should not be permitted to "borrow" another's patented device to be used in the operation or perfection of his own device, although it may perform substantially the same function, but in a different manner, and still be protected against infringement.

"Shirt Pax" as a whole, is not an infringement of plaintiffs' device. It performs a like function in an entirely different manner, but without the aid of plaintiffs' patent and the function it performs in connection with the whole, it would be entirely worthless and unworkable.

Under the circumstances, I think the use of such a device is an infringement, and that the one from whom it is "borrowed" should be compensated therefor.

■ A comparatively small number of the accused devices were used by the defendant, and the profits lost to the plaintiffs as a result thereof, would seem almost insignificant. However, I cannot agree with defendant's contention that the finding and judgment should be against plaintiffs, or that the suit was brought in bad faith. If there was an infringement of its device by the defendant, and the court finds that there was, plaintiffs had a right to bring their suit for such damages as might be sustained.

As the patent has now expired and the ownership is in the public domain, no action can now be taken to prevent the defendant from using the device if he desires. He can only be required to account for the profit on such of the devices as he used.

The parties may submit Findings of Fact, Conclusions of Law and Judgment in accordance with this Memorandum Opinion.